```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/21/2021

|  |  |
|---|---|
| PLYMOUTH COUNTY RETIREMENT ASSOCIATION,<br><br>                               Plaintiff,<br><br>    - against -<br><br>INNOVATIVE TECHNOLOGY, INC., ATI INTERMEDIATE HOLDINGS, LLC, JIM FUSARO, NIPUL PATEL, TROY ALSTEAD, ORLANDO D. ASHFORD, FRANK CANNOVA, RON P. CORIO, BRAD FORTH, PETER JONNA, JASON LEE, ATI INVESTMENT PARENT, LLC, OAKTREE ATI INVESTORS, L.P., OAKTREE POWER OPPORTUNITIES FUND IV, L.P., OAKTREE POWER OPPORTUNITIES FUND IV (PARALLEL), L.P., GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, GUGGENHEIM SECURITIES, LLC, CREDIT SUISSE SECURITIES (USA) LLC, BARCLAYS CAPITAL INC., UBS SECURITIES LLC, COWEN AND COMPANY, LLC, OPPENHEIMER & CO. INC., JOHNSON RICE & COMPANY L.L.C., ROTH CAPITAL PARTNERS, LLC, PIPER SANDLER & CO., MUFG SECURITIES AMERICAS INC., NOMURA SECURITIES INTERNATIONAL, INC., MORGAN STANLEY & CO. LLC,<br><br>                               Defendants. | 21 Civ. 4390 (VM)<br><br>**DECISION AND ORDER** |

**VICTOR MARRERO, United States District Judge.**

    Before the Court are four pending motions from (1) Discovery Global Opportunity Master Fund Ltd. (the "Discovery Fund"), (2) the Plymouth County Retirement Association ("PCRA") and the Carpenters Pension Trust Fund for Northern California ("Northern California Carpenters," and collectively with PCRA, the "Institutional Investor

1

Group" or "IIG"), (3) Erste Asset Management GmbH ("Erste AM"), and (4) the Public Employees Retirement Association of New Mexico ("PERA", and collectively with the Discovery Fund, the Institutional Investor Group, and Erste AM, the "Movants"), requesting appointment as lead plaintiff and lead counsel under the Private Securities Litigation Reform Act ("PSLRA"). (See Dkt. Nos. 62, 66, 70, 75.) After all motions were filed, the Discovery Fund filed a notice of non-opposition to the competing motions, in recognition that the Discovery Fund did not suffer the greatest financial loss. (See Dkt. 81.) The Institutional Investor Group and PERA filed briefs opposing Erste AM's appointment as lead plaintiff. (See Dkt. Nos. 83, 84.)

Upon consideration of these submissions, as well as the related material presented in the record of this proceeding, the Court appoints the Institutional Investor Group as lead plaintiff, and appoints Labaton Sucharow LLP ("Labaton Sucharow") as lead counsel.

## I.  BACKGROUND

The claims in this class-action suit arise out of alleged violations of the federal securities laws by Array Technologies, Inc. ("Array") and several individual defendants between October 14, 2020, and May 11, 2021 (the "Class Period"). (See "Complaint," Dkt. No. 1.) Array

manufactures ground-mounting systems used in solar energy projects and is one of the world's largest producers in that field. The Complaint alleges that Array failed to disclose, during several public offerings, that it was experiencing issues with rising steel and freight costs that had materially adverse impacts on its operations. These rising steel and freight costs allegedly caused Array to miss profit expectations and to revise its full-year projections.

The two complaints filed on May 14, 2021, and June 30, 2021, by plaintiffs PCRA and Julian Keippel, individually and on behalf of others similarly situated (the "Class"), allege that Array's conduct during the Class Period violated Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, as well as Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder. Upon a previous review of the complaints and other papers filed in both actions, the Court found that the two cases involve the same or substantially similar underlying conduct, claims, and parties such that consolidation is appropriate. (Dkt. No. 61.) Having determined that consolidation is appropriate, the Court must appoint the "most adequate plaintiff" to be lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i).

## II. LEGAL STANDARD

As a procedural matter, the PSLRA provides that once a complaint subject to that statute is filed, "the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class," including the claims asserted and the purported class period. Id. § 78u-4(a)(3)(A)(i). No later than 60 days after the publication of such notice, any member of the purported class may move for court appointment to serve as lead plaintiff of the class. See id.

The PSLRA instructs that the presumptively "most adequate plaintiff" is the movant who (1) has filed a timely motion to be appointed; (2) has the "largest financial interest"; and (3) makes a preliminary showing that it satisfies the Rule 23 requirements for class representative. Id. § 78u-4(a)(3)(B)(iii). The second element is the pivotal factor under the PSLRA. See Topping v. Deloitte Touche Tohmatsu CPA, 95 F. Supp. 3d 607, 616 (S.D.N.Y. 2015). This presumption may be rebutted upon a showing that the presumptively "most adequate plaintiff" (a) "will not fairly and adequately protect the interests of the class," or (b) "is subject to unique defenses that render such plaintiff

4

incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

To determine which movant has the largest financial interest, courts in this District overwhelmingly rely on the four factors derived from In re Olsten Corp. Securities. Litigation, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998), and Lax v. First Merchants Acceptance Corp., No. 97 Civ. 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). The Lax/Olsten factors include: "(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered." In re KIT Dig., Inc. Sec. Litig., 293 F.R.D. 441, 445 (S.D.N.Y. 2013). Financial loss is the most important element of the test. See id.

As for satisfying Rule 23's requirements, at the lead plaintiff stage, movants need only make a prima facie showing. See KIT, 293 F.R.D. at 445. "[T]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." Varghese v.

5

China Shenghuo Pharm. Holdings, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008). Typicality is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Topping, 95 F. Supp. 3d at 623 (quotation omitted). The adequacy requirement is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." Id.

### III.   DISCUSSION

A. Appointment of Lead Plaintiff

  1. All Movants Filed Timely Motions

PCRA was the first to commence this action by filing the Complaint on May 14, 2021, and caused notice to be published in a national wire service the following day. (See "McConville Decl.," Ex. D, Dkt. No. 79-4.) Movants in turn filed their lead plaintiff motions on July 13, 2021.

Although all Movants filed their respective lead plaintiff motions within the PSLRA's 60-day deadline, the Institutional Investor Group argues that Erste AM's motion is ineligible for consideration because Erste AM failed to file

6

a sworn certification in compliance with 15 U.S.C. § 78u-4(a)(2)(A). (See "IIG Opp'n," Dkt. No. 84 at 4-9.) Specifically, the Institutional Investor Group argues that Erste AM filed a certification that does not contain an image of an actual signature, which violates the requirements of the PSLRA and this District's electronic filing rules. (See id. at 5.) Erste AM asserts that the following text, which appears at the bottom of the certification, "describes" its electronic signature ("e-signature"): "Erste Asset Management GmbH electronically signed[.] . . . This document was electronically signed with one or more qualified electronic signatures." ("Narwold Mot. Decl.," Ex. A, Dkt. No. 72-1; "Erste AM Reply," Dkt. No. 88 at 7 n.10.) Erste AM explained that it has employed an e-signature practice that requires uploading an "original pdf" of the certification to a website that in turn generates a report on whether the document was actually signed. (Erste AM Reply at 7-8.)

The Court finds that regardless of whether Erste AM's certification was signed, Erste AM's motion is eligible for consideration. There is a "dispute as to whether the certification requirement of the PSLRA applies to candidates for lead plaintiffs . . . who did not file a complaint, as [Section 78u-4(a)(2)(A)] is titled 'Certification filed with Complaint.'" Lucas v. U.S. Oil Fund, LP, No. 20 Civ. 4740,

7

2020 WL 5549719, at *5 (S.D.N.Y. Sept. 16, 2020) (quoting Roby v. Ocean Power Techs., Inc., No. 14 Civ. 3799, 2015 WL 1334320, at *8 n.8 (D.N.J. Mar. 17, 2015)). Since the issue remains unsettled, this Court finds that the existence or adequacy of certifications, in compliance with 15 U.S.C. § 78u-4(a)(2)(A), is not a determinative factor for appointing a lead plaintiff. See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Labranche & Co., Inc., 229 F.R.D. 395, 407 (S.D.N.Y. 2004).[1]

2. Erste AM Suffered the Greatest Financial Loss

According to the Movants' papers submitted to this Court, Erste AM claims the greatest financial loss ($4,979,096.66). (See Narwold Mot. Decl., Ex. B.) This amount outpaces the losses suffered by each of the other three Movants: the Institutional Investor Group ($1,517,965), the Discovery Fund ($1,296,458), and PERA ($1,202,806). (See McConville Decl., Ex. B; Dkt. No. 64-2; Dkt. No. 77-3.) Given that Erste AM's alleged losses are more than double the other Movant's losses, the Court finds that Erste AM has the largest financial interest in this litigation. Given that determination, and that Erste AM has chosen competent

---

[1] If Erste AM was required to file a certification, however, the document Erste AM filed would be deficient under this District's rules for filing e-signed documents because it does not contain an "image of an actual signature" but merely a description that a document was signed. S.D.N.Y. Electronic Case Filing Rules & Instructions, Rule 8.4.

8

counsel, the Court finds that Erste AM is the presumptively most adequate lead plaintiff.

3. Erste AM is Subject to Unique Defenses

The Institutional Investor Group and PERA argue that Erste AM's status as presumptive lead plaintiff is rebuttable on the basis that Erste AM's certification is deficient and thus subject to "unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). The Institutional Investor Group argues that Erste AM has failed to establish its authority, financial interest, or eligibility to be lead plaintiff. (See IIG Opp'n at 12.) PERA more specifically argues that Erste AM lacks standing to bring a securities claim here. (See Dkt. No. 83 at 4-5.) The Court agrees that Erste AM is subject to unique defenses regarding its standing to sue in this action, due to issues concerning when the claims were assigned to Erste AM.

The Second Circuit has made clear that the "minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim." W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100, 108 (2d Cir. 2008). "[A] mere power-of-attorney—i.e., an instrument that authorizes the grantee to act as an agent or an attorney-in-fact for the grantor . . . does not confer

9

standing to sue in the holder's own right because a power-of-attorney does not transfer an ownership interest in the claim. By contrast, an assignment of claims transfers legal title or ownership of those claims and thus fulfills the constitutional requirement of an 'injury-in-fact.'" Id. For Erste AM to have standing as lead plaintiff it must have a property right or ownership interest in the claims alleged against Array.

      a. Assignment of Claims

Erste AM stated in its motion that it suffered losses on "*its* purchases of Array common shares," (Dkt. No. 71 at 5 (emphasis added)), but the entity that bought and sold Array shares was actually Erste AM Fonds Nr. 566 ("Erste 566"), (see Narwold Mot. Decl., Ex. B). Erste AM did not explain its relationship to Erste 566 until its Reply brief, where it stated that "Erste AM is the Austrian management company for its fund [Erste 566] and therefore has standing and is authorized to sue on its fund's behalf as a matter of law." (Erste AM Reply at 4.) After Huff, the principal question is whether Erste 566 assigned its securities claims to Erste AM in manner that conveyed a property interest in those claims.

The recent decision in Gross v. AT&T Inc., No. 19 Civ. 2892, 2019 WL 7759222, reconsideration denied in 2019 WL 3500496 (S.D.N.Y. July 31, 2019), is instructive on this

point. In Gross, the court found that a Belgian asset manager did not have a property interest in a securities claim where it did not own the underlying securities and where the asset manager's fund did not assign an ownership interest in the claims. Erste AM attempts to distinguish itself from the asset manager in Gross on the grounds that Erste 566 did assign the claims at issue here (the "Assignment Declaration"). (See Erste AM Reply at 5; "Narwold Reply Decl.," Ex. C, Dkt. No. 89-3.) The Assignment Declaration, dated July 12, 2021, states that Erste 566 "assign[s] to Erste AM any and all claims of [Erste 566] against the defendants" in this case. (Narwold Reply Decl., Ex. C.)

The Court finds that the Assignment Declaration is deficient because Erste 566 assigned its claims to Erste AM after the commencement of this litigation. Article III standing must be present when the litigation commences. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (2000) (noting that a plaintiff must have "Article III standing at the outset of the litigation"). Assuming that the Assignment Declaration was executed on July 12, 2021, as it provides, Erste AM did not have a property interest in, and therefore standing to bring, the securities claims at issue until nearly 60 days after the first complaint was filed on May 14, 2021. See In re IMAX Sec. Litig., No. 06

11

Civ. 6128 (NRB), 2009 WL 1905033, at *3 (S.D.N.Y. June 29, 2009) (holding that lead plaintiff lacked standing where assignment occurred after litigation commenced).

While some courts have permitted plaintiffs to pursue claims assigned to them after litigation commenced, they generally permit plaintiffs to do so when plaintiffs had standing on at least one other claim at the time litigation began. See In re SLM Corp. Sec. Litig., 258 F.R.D. 112, 115-16 (S.D.N.Y. 2009). Since Erste AM did not have standing to bring any other claims as of May 14, 2021, the Court finds that Erste AM would be subject to a unique standing defense that makes Erste AM unfit to adequately represent the Class. See id.

### b. Third-Party Standing

In its Reply brief, Erste AM seems to argue that regardless of whether it has standing via an assignment of claims, the Court should find that Erste AM falls under the prudential exception to third-party standing. (See Erste AM Reply at 3-5.) The Second Circuit explained in Huff that a court may "permit third-party standing where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." Id. at 109. Even assuming that Erste AM and Erste 566 appear to have a "close relationship," the Court

is unpersuaded that Erste AM has established any barriers that prevented Erste 566 from asserting the securities claims at issue here.

Instead of establishing any such barriers, Erste AM supports its third-party standing argument by citing two cases where "courts have rejected similar challenges to Erste AM's standing." (Id. at 2–4 (citing Bos. Ret. Sys. v. Alexion Pharms., Inc., No. 16 Civ. 2127 (D. Conn. Apr. 12, 2017), Dkt. No. 43; Entezari v. Lorillard, Inc., No. 9904-CB, 2014 WL 6684600, at *2 (Del. Ch. Nov. 25, 2014)).) These cases are unpersuasive. Neither analyzed the third-party standing requirements under Huff. See Alexion, No. 16 Civ. 2127, Dkt. 43; Entezari, 2014 WL 6684600, at *2. Moreover, the court in Entezari dealt with a fiduciary duty claim, and as a result it was not obligated under the PSLRA to consider the unique standing defenses to which the plaintiff could be subject. See Enterazi, 2014 WL 6684600, at *2; Gross, 2019 WL 7759222, at *1.

In a footnote, Erste AM also cites In re Vivendi Universal, S.A. Securities Litigation, 605 F. Supp. 2d 570 (S.D.N.Y. 2009), where a court found that an Austrian asset manager fell under the prudential exception. The Court finds this case unpersuasive for several reasons. First, the court in Vivendi based its conclusion on declarations that the

plaintiffs in that case submitted from experts on Austrian law. Id. at 581. This Court cannot take notice of the truth of the matters asserted in those declarations. See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quotations omitted)). Erste AM has not filed any expert declarations about Austrian law here. Second, the court in Vivendi did not address the barriers to the injured party's ability to assert its own claim in that case — the second prong of third-party standing. See Huff, 549 F.3d at 109. As noted above, Erste AM has failed even to establish any barriers that prevented Erste 566 from bring the securities claims for the shares that *Erste 566* bought and sold. Third, Vivendi was on the cusp of trial, not at the lead plaintiff stage. Appointing Erste AM, in spite of serious questions about its standing, risks severely prejudicing the Class. These issues and their attendant risks can be avoided at this early stage by appointing another lead plaintiff that is capable of adequately representing the Class. See Baydale v. Am. Express, No. 09 Civ. 3016, 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009). Lastly, it is unclear whether the

Second Circuit would adopt the broad reading of third-party standing articulated in Vivendi. See id. at *3.

Accordingly, the Court finds that Erste AM has not established it has standing to sue on behalf of Erste 566.

4. The Institutional Investor Group Can Adequately Represent the Class

Having concluded that Erste AM is subject to unique defenses that render it unfit to be appointed lead plaintiff, the Court finds that the Institutional Investor Group has the second greatest financial interest in this action and is therefore the next presumptively most adequate lead plaintiff. See KIT, 293 F.R.D. at 445.

The Court also finds that the Institutional Investor Group would likely satisfy the class action requirements of Rule 23. The Institutional Investor Group's claims are typical of the Class. Like other Class members, the Institutional Investor Group alleges: (1) it purchased Array shares during the Class Period; (2) it purchased shares in reliance on Array's misrepresentations; and (3) it suffered damages as a result. (See IIG Mot. at 7.) The Institutional Investor Group has also made a preliminary showing that it will adequately protect the interest of the Class. The Institutional Investor Group is represented by experienced and qualified attorneys; the Court is not aware of any

interests the Institutional Investor Group may have that are antagonistic to those of other Class members; and the Institutional Investor Group has a significant financial interest in the outcome of this action.

B. Lead Counsel

After appointment of a lead plaintiff, he or she "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." Varghese, 589 F. Supp. 2d at 398 (quoting In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., No. 03 MDL 1529, 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008)).

The Institutional Investor Group has selected Labaton Sucharow as lead counsel, a representative of which has submitted a resume setting forth the firm's attorneys and relevant experience. (See McConville Decl., Ex. E.) The Court is persuaded that Labaton Sucharow can capably represent the class here, given the firm's experience in litigating class action lawsuits. Accordingly, the Court approves the Institutional Investor Group's selection of Labaton Sucharow as its choice of lead counsel. See, e.g., In re Tarragon Corp. Sec. Litig., No. 07 Civ. 7972, 2007 WL 4302732, at *2

16

(S.D.N.Y. Dec. 6, 2007) (approving counsel based on "affidavit setting forth [the] law firm's experiences as class counsel").

## IV.  ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of the Plymouth County Retirement Association ("PCRA") and the Carpenters Pension Trust Fund for Northern California (collectively, the "Institutional Investor Group") for appointment of lead plaintiff for the proposed class in this action (Dkt. 66) is **GRANTED**; and it is further

**ORDERED** the motion of the Institutional Investor Group for appointment of Labaton Sucharow LLP as lead counsel for the class is **GRANTED**; and it further

**ORDERED** that the motions of Discovery Global Opportunity Master Fund Ltd. (Dkt. No. 62), Erste Asset Management GmbH (Dkt. No. 70), Public Employees Retirement Association of New Mexico (Dkt. No. 76) for appointment as lead plaintiff and for lead counsel are **DENIED**.

**SO ORDERED.**

Dated:     September 21, 2021
           New York, New York

_____
Victor Marrero
U.S.D.J.