UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PLYMOUTH COUNTY RETIREMENT ASSOCIATION, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br>v.<br><br>ARRAY TECHNOLOGIES, INC., et al.,<br><br>   Defendants, | No. 1:21-cv-04390 (VM)<br><br>Judge Victor Marrero<br><br><u>CLASS ACTION</u> |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO ERSTE ASSET MANAGEMENT GMBH'S MOTION FOR RECONSIDERATION OF <u>DECISION AND ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL</u>**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 4

I.    ERSTE AM HAS PRESENTED NO BASIS FOR RECONSIDERATION OF THE COURT'S ORDER ................................................................................................. 4

    A.    Lead Plaintiff Proceedings ....................................................................................... 4

    B.    Standard for Reconsideration ................................................................................... 5

    C.    The Court Correctly Found That Erste AM Is Subject to Unique Standing Defenses ................................................................................................................... 6

        1.    Erste AM Lacks Article III Standing as An Investment Manager ............. 8

        2.    Erste AM Has Not Established Its Third-Party Standing .......................... 9

        3.    Erste 566 Has No Legal Personality and Therefore Assigned Nothing ................................................................................................... 10

        4.    The Purported Assignments Are Defective for Multiple Additional Reasons ..................................................................................................... 11

            (i)    The So-Called "Declaration of Assignment" Appears Little More Than a "Power of Attorney" ................................................. 11

            (ii)    Joint Ownership of Erste 566 Fund Units Heightens Potential Unique Standing Defenses ............................................. 12

            (iii)    Redemption of Units by Co-Owners Heightens Potential Unique Standing Defenses ............................................................. 13

II.    A STAY IS NOT WARRANTED ................................................................................... 14

CONCLUSION ........................................................................................................................... 14

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
    106 F.3d 11 (2d Cir. 1997)......................................................................................................11

*Baydale v. Am. Exp. Co.*,
    No. 09 Civ. 3016 (WHP), 2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009)............................2, 7

*In re Beacon Assocs. Litig.*,
    818 F. Supp. 2d 697 (S.D.N.Y. 2011).....................................................................................11

*In re Bear Stearns Cos., Inc. Sec., Derivative, & Erisa Litig.*,
    No. 08 M.D.L. No. 1963 (RWS), 2009 WL 2168767 (S.D.N.Y. July 16, 2009) .....................6

*California Pub. Emp. Ret. Sys. v. ANZ Sec., Inc.*,
    137 S. Ct. 2042 (2017)..............................................................................................................8

*Catala v. Joombas Co.*,
    No. 18 CIV. 8401 (PGG), 2021 WL 2012379 (S.D.N.Y. May 20, 2021) ................................6

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018)..............................................................................................................8

*Corbello v. DeVito*,
    777 F.3d 1058 (9th Cir. 2015) ................................................................................................12

*Davis v. Blige*,
    505 F.3d 90 (2d Cir. 2007)......................................................................................................12

*DHIP, LLC v. Fifth Third Bank*,
    No. 19-CV-2087 (VSB), 2021 WL 4481118 (S.D.N.Y. Sept. 30, 2021) ................................10

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
    991 F.3d 370 (2d Cir. 2021)............................................................................................ *passim*

*Gross v. AT&T Inc.*,
    No. 19-CV-2892 (VEC), 2019 WL 7759222 (S.D.N.Y. June 24, 2019),
    *reconsideration denied*, 2019 WL 3500496 (S.D.N.Y. July 31, 2019) ....................................1

*Gross v. AT&T Inc.*,
    No. 19-CV-2892 (VEC), 2019 WL 3500496 (S.D.N.Y. July 31, 2019) ............................7, 11

*Marrero Pichardo v. Ashcroft*,
    374 F.3d 46 (2d Cir. 2004).......................................................................................................5

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995) .................................................................................................. 8

*In re Netflix, Inc., Sec. Litig.*,
   No. 12-0225 SC, 2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) .............................................. 7

*Pla v. Renaissance Equity Holdings LLC*,
   No. 12 CIV. 5268 JMF, 2013 WL 3185560 (S.D.N.Y. June 24, 2013) ................................... 6

*Raymond Loubier Irrevocable Tr. v. Loubier*,
   858 F.3d 719 (2d Cir. 2017) .......................................................................................... 10, 11

*In re: Republic Airways Holdings Inc.*,
   No. 16-cv-3315 (KBF), 2016 WL 2621990 (S.D.N.Y. May 6, 2016) .................................... 14

*Schaffer v. Horizon Pharma Plc*,
   No. 16-CV-1763 (JMF), 2016 WL 3566238 (S.D.N.Y. June 27, 2016) ........................ 5, 6, 7

*South Ferry LP No. 2 v. Killinger*,
   271 F.R.D. 653 (W.D. Wash. 2011) ..................................................................................... 13

*Steamfitters Local 449 Pension fund v. Cent. Eur. Distrib.*,
   No. 11–6247 (JBS/KMW), 2012 WL 3638629 (D.N.J. Aug. 22, 2012) .................................. 7

*Theodore v. Purecycle Techs., Inc.*,
   No. 21-cv-809 (M.D. Fla.) .............................................................................................. 10, 12

*In re Vivendi Universal, S.A. Sec. Litig.*,
   605 F. Supp. 2d 570 (S.D.N.Y. 2009) .................................................................................... 9

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008) .................................................................................... 1, 8, 9, 10

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
   127 F. Supp. 3d 156 (S.D.N.Y. 2015) .................................................................................... 3

**Rules & Statutes**

Fed. R. Civ. P. 23 .......................................................................................................................... 4

Fed. R. Civ. P. 60 .......................................................................................................................... 5

Local Civil Rule 6.3 ....................................................................................................................... 5

Local ECF Rule 8.4 ................................................................................................................... 4, 5

15 U.S.C. § 78u–4(a)(2) ........................................................................................................ 4, 5, 7

**Other Authorities**

iii

Erste AM's Website, Investor Rights, https://www.erste-am.com/en/investor-rights (last visited Oct. 12, 2021) .................................................................................3, 9, 12, 13

Court-appointed Lead Plaintiff Plymouth County Retirement Association ("PCRA") and the Carpenters Pension Trust Fund for Northern California ("Northern California Carpenters" and with PCRA, "Lead Plaintiff") respectfully submit this Memorandum of Law in Response to Erste Asset Management GMBH's ("Erste AM") motion seeking reconsideration of this Court's order, ECF No. 137, appointing PCRA and Northern California Carpenters as Lead Plaintiff in the above-captioned securities class action and approving the selection of Labaton Sucharow LLP as Lead Counsel for the Class (the "Order").[1]

## INTRODUCTION

Erste AM maintains on reconsideration the Court erred in finding that it was subject to unique defenses concerning its Article III standing based on the timing of the assignment Erste AM received from its managed fund, Erste AM Fonds Nr. 566 ("Erste 566"), the entity that purportedly transacted in Array securities. But Erste AM's motion raises more questions than it answers. As Judge Caproni recently made clear, foreign asset managers like Erste AM that have not demonstrated clear legal title or property interest in the claims at issue in satisfaction of *W.R. Huff Asset Management. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008), are subject to a "serious" unique standing defense that precludes their appointment as lead plaintiff. *See Gross v. AT&T Inc.*, No. 19-CV-2892 (VEC), 2019 WL 7759222, at *1 (S.D.N.Y. June 24, 2019), *reconsideration denied by Gross v. AT&T Inc.*, 2019 WL 3500496 (S.D.N.Y. July 31, 2019). After three rounds of briefing and this reconsideration motion, it remains unclear which, if any, Erste entity actually holds the property interest sufficient to establish Article III standing. Erste AM's continued inability to establish such standing—and the inability to even

---

[1] Unless otherwise noted, all defined terms and abbreviations remain unchanged from those in PCRA and Northern California Carpenters' motion and supporting papers. *See* ECF Nos. 66, 67, 84, 86.

settle on a theory for standing—threaten to consume this litigation, derail the focus of this case, and create a "needless litigation sideshow." *Baydale v. Am. Exp. Co.*, No. 09 Civ. 3016 (WHP), 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009). The simple presence of these risks warrants denial of Erste AM's motion.

At bottom, Erste AM's motion fails to meet the standard for reconsideration and highlights why reconsideration motions are so disfavored in this District. While Erste AM maintains that the Second Circuit's holding in *Fund Liquidation Holdings LLC v. Bank of America Corp.*, 991 F.3d 370 (2d Cir. 2021) ("*Fund Liquidation*") mandates reversal of the Order, that very authority **actually supports** the Court's ultimate finding that Erste AM is subject to unique defenses regarding its standing to sue in this action. Erste AM continues to assert throughout its reconsideration motion that Erste AM, as investment manager, maintains "sole authority . . . to sue and take all legal action on behalf of [Erste 566], regardless of whether [Erste 566] has executed an assignment." ECF No. 149 at 20, n.12. And Erste AM already conceded that Erste 566, as an Austrian investment fund, "**has no legal personality of its own**." ECF No. 88 at 4 n.5. But the Second Circuit made clear in *Fund Liquidation* that "federal law sets the ground rule that a plaintiff corporation or partnership must have legal existence to have constitutional standing." *Fund Liquidation*, 991 F.3d 370, 386 (2d Cir. 2021). If Erste AM's claim that its managed funds have no legal personality, and therefore lack Article III standing, is true, then the timing of the assignments of claim from Erste 566 to Erste AM at issue in this reconsideration motion is entirely irrelevant.

Even assuming *arguendo* that Erste 566 has corporate existence and is capable of assigning rights to Erste AM, other record evidence renders the purported assignments materially defective regardless of the timing of execution. The so-called "Declaration of Assignment"

2

attached for the first time with Erste AM's reply brief appears to be little more than a "power of attorney" statement, falling short of the requirements for an assignment under Second Circuit law.  And information available on Erste AM's website discloses that Erste 566 is only a "joint owner" of the Array securities at issue in this litigation along with its unit-holders who have a "direct entitlement and rights based on . . . their status as joint owners."[2]  Having failed to obtain assignments from the other "joint owners" of the Array securities at issue in this litigation, Erste 566 and Erste AM remain subject to the non-speculative unique defense that whatever rights it possesses and conferred to Erste AM through assignment do not suffice to establish Article III standing.  Indeed, *Fund Liquidation* holds that a case will not be dismissed for lack of standing if the real party in interest "ratif[ies], join[s], or [is] substituted into the action within a reasonable time.  Only if the real party in interest either fails to materialize or lacks standing itself should the case be dismissed for want of subject-matter jurisdiction." *Fund Liquidation*, 991 F.3d at 386.  To accomplish this here, based on Erste 566's status as only a "joint owner," Erste AM would need to have received assignments from **each** unit holder of Erste 566 units.  Because it did not do so, the extreme remedy of reconsideration is not warranted.

      Last, Erste AM's request for a stay of this action pending determination of this motion for reconsideration falls woefully short of the standard required under Second Circuit precedent and must be denied.

---

[2] *See* Erste AM's Website, Investor Rights, https://www.erste-am.com/en/investor-rights (last visited Oct. 12, 2021); *see also* Erste AM Reply Brief, ECF No. 88 at 5-6 n.8 (discussing information publicly available on its website); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) ("a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination.") (citation omitted).

**ARGUMENT**

I.   **ERSTE AM HAS PRESENTED NO BASIS FOR RECONSIDERATION OF THE COURT'S ORDER**

   A.   **Lead Plaintiff Proceedings**

On September 21, 2021, the Court appointed PCRA and Northern California Carpenters as Lead Plaintiff in the above-captioned action and approved their selection of Labaton Sucharow LLP as Lead Counsel. ECF. No. 137. The Court followed the PSLRA-mandated mechanism for selecting a lead plaintiff, which entailed sequential consideration of movants who (1) filed a timely motion to be appointed; (2) had the "largest financial interest"; and (3) made a preliminary showing that the Rule 23 requirements for a class representative were satisfied. *Id.* at 4, citing § 78u-4(a)(3)(B)(iii). The Court also correctly observed that the presumption afforded the movant with the "largest financial interest" may be rebutted upon a showing that the presumptively "most adequate plaintiff" (a) "will not fairly and adequately protect the interests of the class," or (b) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* at 4-5, citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

In opposing Erste AM's motion for appointment as Lead Plaintiff, PCRA and Northern California Carpenters argued that Erste AM failed to file a valid and timely certification because Erste AM's certification was unsigned, as required by the PSLRA and Southern District electronic filing Rules. *See* 15 U.S.C. § 78u–4(a)(2); Local ECF Rule 8.4 (emphasis added) (requiring document to be "***personally signed***" with the "***image of the actual signature***."). The Court agreed, noting that if Erste AM "was required to file a certification, however, the document Erste AM filed would be deficient under this District's rules for filing e-signed documents because it does not contain an 'image of an actual signature' but merely a description that a document was signed." Order at 8, n.1, citing Local ECF Rule 8.4. However, the Court

also found that the issue of whether Erste AM was required to file a certification remained "unsettled," and thus found the issue was not a "determinative factor for appointing a lead plaintiff." *Id.*

Despite the "unsettled" risk that Erste AM's certification may be invalid, the Court proceeded to analyze the size of competing losses pursuant to the PSLRA, finding that "Erste AM has the largest financial interest in this litigation," *id.* at 8, thus triggering the presumption that "Erste AM is the presumptively most adequate lead plaintiff," *id.* at 8-9. The Court also held that Erste AM was subject to a unique standing defense and, thus, that the presumption in favor of Erste AM had been rebutted. *Id.* at 9 ("PERA more specifically argues that Erste AM lacks standing to bring a securities claim here."). *Id.* The Court properly found that for Erste AM to have standing as lead plaintiff it must have a property right or ownership interest in the claims alleged against Array. *Id.* Despite four opportunities to do so, Erste AM has failed to present any evidence to clarify its standing to bring suit, either on its own or on behalf of Erste 566.

      **B.**      **Standard for Reconsideration**

Motions for reconsideration are governed by Federal Rule of Civil Procedure 60(b) and Local Civil Rule 6.3, which are meant to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *1 (S.D.N.Y. June 27, 2016). Such motions are "generally not favored and [are] properly granted only upon a showing of exceptional circumstances." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004). Reconsideration may be granted ***only where*** the challenging party can establish that the court overlooked "controlling decisions or factual matters that were put before it on the underlying motion ***and*** which, if examined, might reasonably have

5

led to a different result." *Catala v. Joombas Co.*, No. 18 CIV. 8401 (PGG), 2021 WL 2012379, at *2 (S.D.N.Y. May 20, 2021). "The Rules permitting motions for reconsideration must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Pla v. Renaissance Equity Holdings LLC*, No. 12 CIV. 5268 JMF, 2013 WL 3185560, at *1 (S.D.N.Y. June 24, 2013); *see also In re Bear Stearns Cos., Inc. Sec., Derivative, & Erisa Litig.*, No. 08 M.D.L. No. 1963 (RWS), 2009 WL 2168767, at *1 (S.D.N.Y. July 16, 2009) (same).

Applying that standard, Erste AM presents no valid grounds for reconsideration and its motion must be denied. Erste AM maintains that *Fund Liquidation* contradicts the Order's finding that Erste 566's assignment is "deficient" and that Erste AM "did not have . . . standing" simply because Erste 566 executed its assignment "after the first complaint was filed . . . ." ECF No. 149 at 12. But timing of the assignment notwithstanding, the holding in *Fund Liquidation* simply does not mandate reversal of the Court's Lead Plaintiff Order. In fact, *Fund Liquidation* ***actually supports*** the Order's conclusion, as the Second Circuit makes clear that "a plaintiff corporation or partnership must have legal existence to have constitutional standing." *Fund Liquidation*, 991 F.3d at 386. As discussed below, the Court's finding that Erste AM lacks standing to bring a securities claim was well within the Court's discretion and remains warranted even with the benefit of the *Fund Liquidation* holding.

**C.  The Court Correctly Found That Erste AM Is Subject to Unique Standing Defenses**

At the lead plaintiff stage, courts fulfill a "gatekeeping function in class action litigation" and "the Court may have some discretion as gatekeeper in securities class actions." *Schaffer*, 2016 WL 3566238, at *1. The dispositive issue here is whether Erste AM is subject to ***potential*** attacks on its standing. *Id.* at *3 (discussing burden of proof necessary to rebut PSLRA

6

presumption and noting that "[m]any courts have rejected appointments of lead plaintiffs based on *potential* risks"). The Court must ask whether Erste AM is "subject to" a "non-speculative" unique standing defense from defendants that "may" be successful. *Gross v. AT&T Inc.*, No. 19-CV-2892 (VEC), 2019 WL 3500496, at *2 (S.D.N.Y. July 31, 2019); *see also Schaffer*, 2016 WL 3566238, at *6.

Erste AM "bears the burden of demonstrating [that it has standing as the real party in interest and] that the district court possesses subject-matter jurisdiction." *Fund Liquidation*, 991 F.3d at 384. Despite multiple opportunities, it has failed to do so. In fact, Erste AM's apparent failure to settle on a singular theory to establish Article III standing—instead simultaneously asserting that (1) Erste 566 validly and timely assigned its claims to Erste AM, but yet (2) Erste 566 also lacks any legal personality of its own—lays bare the "non-speculative" unique standing defense Erste AM would face as lead plaintiff in this action, regardless of how or when Erste 566 purportedly executed any assignment to Erste AM.

As Court-appointed Lead Plaintiff, it is incumbent on PCRA and Northern California Carpenters to raise these concerns on behalf of the Class, particularly where, as here, the risks can be "circumvented at this early stage by selecting another lead plaintiff." *Baydale*, 2009 WL 2603140, at *3; *Steamfitters Local 449 Pension fund v. Cent. Eur. Distrib.*, No. 11–6247 (JBS/KMW), 2012 WL 3638629, at *11 (D.N.J. Aug. 22, 2012) ("The Court cannot prejudice the class members by subjecting them to the time and expense of litigating these unique defenses" relating to movant's questionable standing.); *In re Netflix, Inc., Sec. Litig.*, No. 12-0225 SC, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) (rejecting movant whose standing would force the class to litigate unique issues). And because PCRA and Northern California Carpenters now have fiduciary responsibilities on behalf of the entire Class as Lead Plaintiff, any

attempt to label these attacks on Erste AM's standing as untimely (because PCRA and Northern California Carpenters did not specifically raise during the lead plaintiff briefing process) lacks merit and should be disregarded. *See, e.g.*, *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995) (noting "when a potential conflict arises between the named plaintiffs [(or lead plaintiff movant)] and the rest of the class," lead counsel has continuing obligation to so inform the court).[3]

### 1. Erste AM Lacks Article III Standing as An Investment Manager

As the self-proclaimed investment advisor, Erste AM had no ownership interest in any of the Array shares purchased by Erste 566 during the Class Period, and therefore does not have Article III standing on its own. The Second Circuit has made clear that the "minimum requirement for [an] injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim." *Huff*, 549 F.3d at 108. "[A] mere power-of-attorney—*i.e.*, an instrument that authorizes the grantee to act ***as an agent*** or an attorney-in-fact for the grantor . . . does not confer standing to sue in the holder's own right because a power-of-attorney does not transfer an ownership interest in the claim." *Id.* Erste AM's website unequivocally establishes that it is an ***agent*** of the Unit-holders of its funds.[4] Accordingly, Erste AM itself does not have Article III

---

[3] Erste AM's appointment would also severely undermine the interests of the Class given recent Supreme Court precedent that may expose absent Class members to unneeded statute of limitations and statute of repose concerns. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018); *California Pub. Emp. Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2051 (2017). There is no need to subject the Class to these potential issues where PCRA and Northern California Carpenters are more than capable of protecting the interests of the Class.

[4] *See* Erste AM's Website, Investor Rights, https://www.erste-am.com/en/investor-rights (last visited Oct. 12, 2021) ("According to the prevailing interpretation of Austrian law, the investment agreement concluded between the Unit-holders and the Management Company qualifies as ***an agency agreement*** . . . . It obligates the Management Company to manage the ***fund assets jointly owned by the Unit-holders*** and to perform the legal acts and legal transactions required to do so.").

standing on its own, and can only establish standing by showing either (1) third-party standing, or (2) a *validly* assigned claim by those with standing to bring those claims. *Huff*, 549 F.3d at 108-09. Erste AM cannot satisfy either theory of standing.

### 2. Erste AM Has Not Established Its Third-Party Standing

The Second Circuit explained in *Huff* that a court may "permit third-party standing where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *Huff*, 549 F.3d at 109. This Court correctly held that Erste AM failed to establish any barriers that prevented Erste 566 from asserting the securities claims at issue in this litigation. Order at 12-13. Erste AM *never even attempted* to establish any barriers to Erste 566 bringing suit in its own name, relying instead on "unpersuasive" non-binding authority which failed to analyze third-party standing or did not involve securities claims subject to the PSLRA's unique defense inquiry. Order at 13. Erste AM also never submitted declarations by experts in Austrian law that would potentially enable it to establish such an argument as the weight of precedent requires.[5] Order at 14. The Court thus correctly concluded that "Erste AM has not established it has standing to sue on behalf of Erste 566." *Id.*; *see also Theodore v. Purecycle Techs., Inc.*, No. 21-cv-809 (M.D. Fla.), ECF No. 80 at 11 ("Erste AM asserts that it 'is the Austrian management company for its fund—Erste AM Fonds Nr. 566—and therefore has standing and is authorized to sue on its fund's behalf as a matter of law.' But that statement in the Erste AM Reply is unsupported.").

---

[5] Erste AM's citation to *In re Vivendi Universal, S.A. Securities Litigation*, 605 F. Supp. 2d 570, 581-82 (S.D.N.Y. 2009)—which the Court already found was "unpersuasive for several reasons"—is disingenuous. ECF No. 137 at 13. In *Vivendi*, the court found that a different Austrian fund had standing solely based on the fact that the plaintiffs offered an expert on Austrian law and the defendant did not. *See id.* Here, Erste AM failed to offer an opinion from an expert on Austrian law, yet asserts that the opinions of an expert for an unrelated fund in an unrelated case apply to them.

Erste AM has not even challenged this determination on reconsideration, and therefore cannot avail itself of third-party standing. The only remaining avenue for Erste AM to vitiate its standing is to have received a *valid* assignment from Erste 566. *See* Order at 10 ("After *Huff*, the principal question is whether Erste 566 assigned its securities claims to Erste AM in manner that conveyed a property interest in those claims.").

### 3. Erste 566 Has No Legal Personality and Therefore Assigned Nothing

Erste AM maintains that Erste 566, "[a]n Austrian investment fund has *no legal personality* of its own.'" *See, e.g.*, ECF No. 88 at 4 n.5. Accepting Erste AM's representation as true "raises the threshold issue of whether [Erste 566] *legally exists at all*; if it does not, then [the Court] would lack subject matter jurisdiction over this action." *DHIP, LLC v. Fifth Third Bank*, No. 19-CV-2087 (VSB), 2021 WL 4481118, at *4 (S.D.N.Y. Sept. 30, 2021). The Second Circuit's *Fund Liquidation* order makes clear that federal law sets the ground rule that a plaintiff corporation or partnership must have legal existence to have constitutional standing, "[a]nd without legal existence, [Erste 566] lack[s] standing to sue." *Fund Liquidation*, 991 F.3d at 384 ("After all, '[t]he most elemental requirement of adversary litigation is that there be two or more parties,' meaning that '[a]bsent a plaintiff with legal existence, there can be no Article III case or controversy.'") (quoting *House v. Mitra QSR KNE LLC*, 796 F. App'x 783, 787 (4th Cir. 2019)).

Erste AM has failed to submit competent evidence under Austrian law that Erste 566 has legal personhood such that it is even capable of *validly* assigning any property interest to Erste AM sufficient to establish Article III standing. *See, e.g.*, *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 706 (S.D.N.Y. 2011) (finding that "unincorporated subdivisions of a corporate entity have no legal personality and cannot satisfy judgments or be sued"); *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 731 (2d Cir. 2017) (finding entities that are not "organized according to state law . . . are incapable of being haled into court."). And without

property interest necessary to *validly* assign any claim, the timing of Erste 566's assignment is immaterial, and "the risk that [Erste AM] may lack standing to pursue this action under controlling precedent [remains] serious." *Gross*, 2019 WL 3500496, at *2 (rejecting reconsideration motion where Belgian asset manager faced "non-speculative risk that Defendants may succeed in mounting a standing challenge, possibly premised on foreign law").

### 4. The Purported Assignments Are Defective for Multiple Additional Reasons

Even assuming that Erste 566 has legal personality and is capable of assigning rights to Erste AM (notwithstanding Erste AM's representations to the contrary), other evidence underscores the potential risks attendant to Erste AM establishing the validity of its assignment.

### (i) The So-Called "Declaration of Assignment" Appears Little More Than a "Power of Attorney"

As PERA has previously noted (*see* ECF No. 92 at 2-3), the so-called "Declaration of Assignment" that Erste AM filed for the first time with its reply brief appears to be little more than a "power of attorney" statement, which falls short of the requirements for a valid assignment under Second Circuit precedent. *Compare* ECF No. 89-3 ¶ 5 *with Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17-18 (2d Cir. 1997) (holding that "[i]n order to make a valid assignment, the owner must 'manifest an intention to make the assignee the owner of [the] claim'" and that a "power of attorney" – the "provision by which one person grants another the power to sue on and collect on a claim" – *is not* equivalent to an assignment and is therefore insufficient to enable the grantee to bring a claim in their own name for standing purposes) (citation omitted). More importantly, Erste AM has done nothing to demonstrate that the purported assignments have been executed in compliance with Austrian law sufficient to establish a binding legal contract. *See Theodore v. Purecycle Techs., Inc.*, No. 21-cv-809 (M.D.

Fla.), ECF No. 80 at 11 (finding "Erste AM's allegations regarding an assignment from the fund are conclusory and provide no meaningful information").

### (ii) Joint Ownership of Erste 566 Fund Units Heightens Potential Unique Standing Defenses

Information available on Erste AM's website discloses that Erste 566 is at most only a "joint owner" of the Array securities at issue in this litigation along with its Unit-holders. With respect to "Claims for Damages," Erste AM's website states:

> ***Along with the direct entitlements and rights of investors based on*** the investment agreement and ***their status as joint owners***, investors have secondary contractual rights (such as claims for damages) vis-à-vis the Management Company in the event of the culpable violation of the obligations that apply to the Management Company. These rights are based on general civil law.[6]

A plain reading of this clause suggests that Erste AM Unit-holders retain the "direct entitlements and rights of investors" that would permit them to bring the securities claims at issue in this litigation. As such, Erste 566's assignment of its rights to Erste AM is either invalid or insufficient to confer Article III standing. *See Corbello v. DeVito*, 777 F.3d 1058, 1065 (9th Cir. 2015) ("joint-owner cannot transfer more than he himself holds; thus, an assignment . . . from one joint-owner to a third party cannot bind the other joint-owners or limit their rights"); *Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007) (transfer agreement though which one co-owner transferred rights to third-party does not extinguish other co-owner's accrued claims). Having failed to obtain assignments from all "joint owners" of the Array securities at issue in this litigation, Erste

---

[6] *See* Erste AM's Website, Investor Rights, https://www.erste-am.com/en/investor-rights (last visited Oct. 12, 2021) ("[T]he Management Company is obligated to grant the Unit-holders the status of joint owners upon payment of the issue price plus a front-end surcharge. . . . The Unit-holders are joint owners of the assets of the Fund in accordance with the number of units they own.").

AM is subject to the non-speculative unique defense that the rights it received through the assignment (even if valid) do not suffice to establish Article III standing under the very precedent it cites on reconsideration. *See Fund Liquidation*, 991 F.3d at 386 (holding that an action should be dismissed for want of subject-matter jurisdiction where the "real party in interest either fails to materialize or lacks standing itself").

### (iii) Redemption of Units by Co-Owners Heightens Potential Unique Standing Defenses

Erste AM's website explains that "Unit-holders can demand the redemption of their units at any time."[7] Thus, even assuming *arguendo* that Erste 566 (1) has legal personality, (2) validly assigned its claims to Erste AM, ***and*** (3) that Unit-holders are not in fact "co-owners" who retain the right to bring suit, Erste AM is nevertheless subject to the potential unique defense that it may be deprived, as redemptions occur, of even the rights to sue, which on redemption would revert exclusively to the Unit-holders. These unsettled questions surrounding Erste AM's standing, which Erste AM has now had four opportunities to address, evince the potential for unique standing defenses that risk distracting from the litigation and prejudicing the Class of Array investors Erste AM seeks to represent. These repeated failures to introduce evidence of ***either*** Erste AM's or Erste 566's standing foreshadow the very "risks [that] can be avoided at this early stage by appointing another lead plaintiff that is capable of adequately representing the Class," Order at 14, and thereby foreclose reconsideration. *See South Ferry LP No. 2 v. Killinger*, 271 F.R.D. 653, 659 (W.D. Wash. 2011) (class representative inadequate when "[i]t is predictable that [its] standing could become a major focus of the litigation").

---

[7] *See* Erste AM's Website, Investor Rights, https://www.erste-am.com/en/investor-rights (last visited Oct. 12, 2021).

## II.         A STAY IS NOT WARRANTED

Erste AM has not even set forth the factors the Court must consider in granting a stay, let alone establish that they are met here.[8] Erste AM fails to provide any reason why it will be "irreparably harmed" by the prosecution of this case by PCRA and Northern California Carpenters. Nor does Erste AM address the hardships imposed upon PCRA and Northern California Carpenters and the other members of the Class, who will undoubtedly be prejudiced by the delay in the prosecution of their claims and the potential loss of evidence that accompanies the passage of time. The potential hardship to the Class is especially acute here, where claims are premised on a fraudulent scheme involving dozens if not hundreds of potential witnesses, including former employees or third parties who may not be under an obligation to preserve evidence, and other evidence that could be impaired, lost, or destroyed if a stay is granted.

The request for a stay should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Erste AM's motion for reconsideration.

DATED: October 19, 2021

Respectfully submitted,

/s/ Francis P. McConville

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
Francis P. McConville
140 Broadway

---

[8] In determining whether to grant a motion for a stay pending appeal, the Court should analyze the following factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re: Republic Airways Holdings Inc.*, No. 16-cv-3315 (KBF), 2016 WL 2621990, at *7 (S.D.N.Y. May 6, 2016) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

        New York, New York 10005
        Telephone: (212) 907-0700
        Facsimile: (212) 818-0477
        ckeller@labaton.com
        ebelfi@labaton.com
        fmcconville@labaton.com

*Counsel for Lead Plaintiff and Lead Counsel for the Class*

**THORNTON LAW FIRM LLP**
Guillaume Buell
1 Lincoln Street
Boston, Massachusetts 02111
Telephone: (617) 720-1333
Facsimile: (617) 720-2445
gbuell@tenlaw.com

*Additional Counsel to Lead Plaintiff*

15