USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/05/2023

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PLYMOUTH COUNTY RETIREMENT ASSOCIATION and CARPENTERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA, Individually and on Behalf of All Others Similarly Situated,

                    Plaintiffs,

- against -

ARRAY TECHNOLOGIES, INC., ATI INTERMEDIATE HOLDINGS, LLC, JIM FUSARO, NIPUL PATEL, TROY ALSTEAD, ORLANDO D. ASHFORD, FRANK CANNOVA, RON P. CORIO, BRAD FORTH, PETER JONNA, JASON LEE, ATI INVESTMENT PARENT, LLC, OAKTREE ATI INVESTORS, L.P., OAKTREE POWER OPPORTUNITIES FUND IV, L.P., OAKTREE POWER OPPORTUNITIES FUND IV (PARALLEL), L.P., GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, GUGGENHEIM SECURITIES, LLC, CREDIT SUISSE SECURITIES (USA) LLC, BARCLAYS CAPITAL INC., UBS SECURITIES LLC, COWEN AND COMPANY, LLC, OPPENHEIMER & CO. INC., JOHNSON RICE & CO. LLC, ROTH CAPITAL PARTNERS, LLC, PIPER SANDLER & CO., MUFG SECURITIES AMERICAS INC., NOMURA SECURITIES INTERNATIONAL, INC., and MORGAN STANLEY & CO. LLC,

                    Defendants.

**21 Civ. 4390 (VM)**

**ORDER**

---

**VICTOR MARRERO, United States District Judge.**

On May 19, 2023, the Court entered a Decision and Order granting Defendants' motion to dismiss the CAC in its entirety.[1] (See "D&O," Dkt. No. 185.) As part of the D&O, the

---

[1] All capitalized and defined terms have the same meaning as those used in the Court's May 19, 2023 Decision and Order, Dkt. No. 185.

1

Court granted Plaintiffs leave to seek to replead by "setting forth with particularity what amendments to the CAC they would make to cure the deficiencies in the CAC described above," and also allowing Defendants opportunity to respond. (See id. at 58.) The parties both filed letters stating their respective positions on the motion for leave to amend. (See "Pls.' Ltr.," Dkt. No. 186; see also "Opp." Dkt. No. 187.)

Having considered the submissions, the Court finds allowing leave to replead would be futile to cure the deficiencies previously identified by the Court. See Thea v. Kleinhandler, 807 F.3d 492, 496-97 (2d Cir. 2015) ("Proposed amendments are futile if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.") (internal quotation marks and citations omitted); see also Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 553 (2010) (noting that "[b]y its terms, [Federal] Rule [of Civil Procedure] 15(a) gives discretion to the district court in deciding whether to grant a motion to amend a pleading"). Accordingly, Plaintiffs' request for leave to amend the CAC is **DENIED,** and the action is dismissed with prejudice. Cf. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG, 752 F.3d 173, 188 (2d Cir. 2014) (dismissal with prejudice appropriate where after having "one opportunity to amend their complaint" it was "unlikely that

2

the deficiencies raised . . . were unforeseen by plaintiffs when they amended . . . [and they] have identified no additional facts of legal theories . . . they might assert if given leave to amend" to cure those deficiencies).

## I. DISCUSSION

### A. NEW FALSITY ALLEGATIONS

Plaintiffs say that, if granted leave to amend, they would include new claims from new and existing confidential witnesses ("CW" or "CWs") supporting their claims of falsity. Those allegations are meant to address two of the Court's findings. First, they are meant to address the Court's findings that Array's statements made clear that "the ability to pass on costs [to its customer's] was only an option and one that would be evaluated on a case-by-case basis." (D&O at 37.) In other words, that the pass-through features of the contracts were "not guaranteed but contingent." (Id.)

The new allegations provided by two new CWs indicate that "in many instances" (but, apparently, not all) the "prices were fixed" in the contracts that Array had with its customers. (Pls.' Ltr. at 2.) Then, that CW continues that Array "fixed" the language in what the CW considered to be "poor contracts" to allow "for increased costs in materials to be passed on to Array's customers" after the Class Period

3

had closed. (Id.) This, Plaintiffs aver, shows that Array could not, initially, pass along any costs.

These new allegations remain deficient even if accepted as true. As noted above, the Court's conclusion in the D&O that the CAC failed to state a claim was based on the notion that Array disclosed that it was not guaranteed that it could pass on costs and that it evaluated its ability to do so on a "case-by-case basis." (D&O at 37.) That Array had fixed prices built into its contracts in "many instances" does not quantify with sufficient particularity the breadth of issue. How many contracts does Array have? How many contracts contained the fixed price language? A majority? Nearly all? Less than a quarter? Answering even a few of those questions could have provided the particularity needed to support Plaintiffs' claim that Array did not have the ability to pass on costs. The failure to do so after intervening months of additional investigation makes clear it would be futile to amend these claims.

Second, Plaintiffs include new information regarding Array's supposed use of "outdated" or "stale" cost inputs. These new allegations respond to the Court's finding that the CW's allegations in the CAC failed to provide sufficient detail on what inputs employees were told to use and the impact that those inputs had on forecasts. Plaintiffs now

4

indicate that, based on its CW, that "throughout his tenure, Array calculated costs for projects using 'the prior quarter's numbers,' which CW4 described as pricing from 2-3 months earlier." (Pls.' Ltr. at 4.) Thus, as steel costs increased, "Procurement Mangers [sic] were forced to purchase materials at prices higher than those quoted." (Id.)

The CW that Plaintiffs retrieved this information from was an Array employee from June 2018 to March 2020. (CAC ¶ 81 n.10.) But the Class Period began in October 2020. (Id. ¶ 7.a.) Thus, it is not clear how CW4 has knowledge of the profit margin and forecasts that could be achieved or of Array's practices during the Class Period. See In re Hebron Tech. Co., Ltd. Sec. Litig., No. 20 Civ. 4420, 2021 WL 4341500, at *18 & n.20 (S.D.N.Y Sept. 22, 2021) (collecting cases indicating that pre-class period allegations from CWs are insufficient to support the falsity of a statement "when made"). Moreover, as Defendants point out, these "new" allegations mirror those the Court had already found were deficient in the D&O. (Compare Pls.' Ltr. at 4 ("Array calculated costs for projects using 'the prior quarter's numbers,' which CW4 described as pricing from 2-3 months earlier"), with CAC ¶ 81 ("CW4 recounted how he had been asked to use prices from 2 or 3 months prior to a project to estimate pricing.").)

5

These new allegations would also fail for an independent reason. Plaintiffs contend that these new allegations render false Array's statements that it had a "'demonstrated ability to reduce cost' while 'maintaining profit margins.'" (Pls.' Ltr. at 4.) But the Court already held that these very statements were nonactionable puffery. (See D&O at 26-27.) As Plaintiffs do not identify any other statements that would be rendered false by this "undisclosed" practice, the Court finds it would be futile to allow amendment of these claims. (See id. at 3-4.)

B. NEW SCIENTER ALLEGATIONS

Plaintiffs' new allegations in support of scienter also fall short. Plaintiffs state they would include allegations from CW4 that "he attended weekly or sometimes twice-a-week meetings, attended by Defendant Fusaro, COO Stuart Bolland, and others, where the use of stale pricing data, increased steel costs, and the resulting reduced profit margins were discussed for every project." (Pls.' Ltr. at 5.) Plaintiffs say they would also include allegations from a new CW, CW7, indicating that a Vice President of Array "came out of a Board meeting in February 2021 and told CW7 that 'they were concerned that costs were going up.'" (Id.)

CW4's new allegations do not raise a strong inference of scienter. Far from supporting the notion that CW4 was

6

instructed by Array executives to use old prices to disguise the effect that increased costs might have on Array's margins in order to mislead investors, the new allegations indicate that he did this "throughout his tenure," suggesting it was common practice for at least two-years before the Class Period started. (Pls.' Ltr. at 4.) This undermines the notion that Array's executives acted with the requisite state of mind or conscious misbehavior during the Class Period by making these instructions. (See id. at 3.) Nor does CW7's new statement cure the deficiency the Court previously identified, "that Fusaro and Patel genuinely believed steel would return to pre-pandemic pricing, regardless of the contemporaneous reports they received about the current, and rising, costs of steel." (D&O at 46.) Accordingly, the new allegations Plaintiffs would add are futile to cure the deficiencies in the CAC as to scienter.

## II. ORDER

For the reasons stated above, it is hereby

**ORDERED** that Plaintiffs' request for leave to amend the Corrected Consolidated Amended Complaint is **DENIED**. The

7

action is dismissed with prejudice. The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

Dated:   5 July 2023
         New York, New York

_____
Victor Marrero
U.S.D.J.